

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
11/02/2015

| | | |
|---|---|---|
| IN RE: | § | |
| REYNALDO  ACOSTA; dba RDB | § | CASE NO: 15-70503 |
| TRANSPORT; dba R&A TRANSPORT | § | |
| Debtor | § | |
| | § | CHAPTER  13 |

## MEMORANDUM OPINION
## REGARDING
## <u>DEBTOR'S EMERGENCY MOTION TO IMPOSE THE AUTOMATIC STAY</u>
### [*Resolving ECF No.*  10]

### I. Introduction

In the instant motion, the Court is asked to determine whether to grant Reynaldo Acosta's (the "***Debtor***") Emergency Motion To Impose the Automatic Stay pursuant to 11 U.S.C. § 362(c)(4)'s required rebuttal of the presumption that a bankruptcy filing is not in good faith where the debtor had two or more cases pending within the prior year.

### II.  Findings Of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

### A.  The Debtor's First Bankruptcy Case

1.      On May 10, 2013, Debtor filed his initial petition for bankruptcy relief under chapter 13 of Title 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***"),[1] initiating case number 13-70233-M-13 and thereby invoking the automatic stay pursuant to 11 U.S.C. §362.  [ECF No. 1].  Debtor filed his chapter 13 plan on the same date.  [ECF No. 2].  The Plan

---

[1] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

called for monthly payments in the amount of $10,000.00 to the chapter 13 trustee with a 47% dividend to the general unsecured class of creditors.

2.      On May 24, 2013, Debtor filed his Motion To Extend The Automatic Stay.  [ECF No. 11].  Debtor had filed a prior case at 11-70784-M-13 on November 30, 2011, which was dismissed on April 23, 2015.

3.      Debtor listed his occupation as owner/operator of RDB Transport, with income of approximately $12,376.15 per month.  [ECF No. 92].

4.      On June 27, 2013, the court granted Debtor's Motion and entered an order extending the automatic stay.  [ECF No. 30].

5.      On October 17, 2013, the chapter 13 trustee filed her Motion To Dismiss.  [ECF No. 46].

6.      On January 23, 2014, the court gave Debtor fourteen days to cure the deficiencies stated in the trustee's Motion To Dismiss, or else the case would be dismissed.  [ECF No. 61].

7.      On May 16, 2014, the trustee filed her Second Motion To Dismiss in which the trustee alleged that the Debtor, inter alia, had failed to file a feasible plan.  [ECF No. 67].

8.      On January 22, 2015, the plan was ultimately confirmed by the court.  [ECF No. 99].

9.      On March 27, 2015, Hidalgo County filed a Motion To Dismiss for failure to pay post-petition ad valorem taxes.  [ECF No. 104].

10.      On April 20, 2015, the court entered its order dismissing bankruptcy case 13-70233-M-13.  [ECF No. 105].

**B.  The Debtor's Second Bankruptcy Case**

11.      On May 7, 2015, Debtor filed another chapter 13 petition, initiating case number

15-70242-M-13 and thereby again invoking the automatic stay.  [ECF No. 1].

12.     On May 15, 2015, Debtor filed his motion to extend the automatic stay.  [ECF No. 14].

13.     Debtor again listed his occupation as owner/operator of RDB Transport, this time earning approximately $13,085.09 per month.  [ECF No. 36].

14.     On May 22, 2015, PACCAR Financial Corp. ("**PFC**") filed its Objection to Debtor's Motion, alleging, inter alia, lack of adequate protection.  [ECF No. 15].

15.     On June 3, 2015, this Court signed an Agreed Order Extending The Automatic Stay regarding PFC's objection.  [ECF No. 23].

16.     On June 4, 2015, this Court entered its order extending the automatic stay as to all creditors.  [ECF No. 25].

17.     On June 23, 2015, the case was automatically dismissed by this Court for deficiencies.  [ECF No. 34].

18.     On July 6, 2015, Debtor filed a Motion To Reconsider Dismissal, [ECF No. 39], which was denied by this Court on August 19, 2015.  [ECF No. 46].

**C.  The Debtor's Third Bankruptcy Case (the pending chapter 13 case)**

19.     On October 5, 2015, Debtor filed the instant chapter 13 petition, case number 15-70503-M-13, thereby again invoking the automatic stay pursuant to 11 U.S.C. §362.  [ECF No. 1].

20.     On October 5, 2015, Debtor filed his plan of reorganization (herein "**Plan**").  [ECF No. 2].  The Plan calls for monthly payments in the amount of $6,800.00 to the chapter 13 trustee with a 100% dividend to the general unsecured class of creditors.  *Id.*

21.     Debtor again lists his occupation as an "Owner/Operator" of RDB Transport, this

time earning approximately $9,085.09 in net monthly income.  [ECF No. 1 -  Schedule I].

22.   On October 13, 2015, Debtor filed an Emergency Motion To Impose The Automatic Stay (the "**Motion**").  [ECF No. 10].

23.   On October 14, 2015, PFC filed its Objection to Debtor's Motion (the "**Objection**").  [ECF No. 13].

24.   On October 27, 2015, PFC and the Debtor filed an Agreed Order on Debtor's Motion (the "**Agreed Order**").  [ECF No. 23].  The Agreed Order stipulated, inter alia, that Debtor will make payments in accordance with the Plan and maintain full insurance coverage on the truck tractors that serve as collateral for PFC's secured claim.  *Id.* at 2-3.

**D.  The Hearing on October 28, 2015**

25.   On October 28, 2015, this Court conducted   an evidentiary hearing (the "**Hearing**") on the instant motion and PFC's Objection.  At the hearing, Debtor's Counsel was present to argue the instant motion.  Additionally, Debtor was present and testified as to the following:

   a.   Following the dismissal of Debtor's Second Bankruptcy, case number 15-70242, Debtor used the funds distributed by the chapter 13 trustee to make a payment to creditor(s).  PFC was initially offered a payment against the outstanding debts, but PFC refused to accept the payment.  *See also* [ECF No. 10 ¶ 4].  Ultimately, Debtor made a payment to a different creditor, Mack Financial Services, instead of PFC.  Mack Financial Services had secured claims on a 2006 KW Tractor (#140335) and a 2005 Kenworth Tractor (#110881).  [Case No. 15-70242, ECF No. 1 at 16].  The result was that Mack Financial Services released its liens as to the two truck tractors and Debtor thereby eliminated a significant debt, which

enabled Debtor to propose the Plan with much lower payments.

b.  Debtor testified on the various vehicles that are listed on Schedule B, Item 25, [ECF No. 1]:

    i.  The 2007 Mustang is currently still in Debtor's possession, but is being used by one of Debtor's children.  When questioned by the Court, however, Debtor testified that there was no outstanding debt or payments being made on the vehicle, despite the fact that Schedule D listed a debt in the amount of $13,064.16 and the chapter 13 plan proposed that the Debtor was to continue making payments in accordance with the pre-petition contract on a supposed non-existing debt.

    ii.  The 2007 Chevy Avalanche was surrendered to a local dealer and is no longer in Debtor's possession, despite it being listed in Schedules B, C, and D, and despite the fact that the Chevy Avalanche was listed in the Plan as a secured debt in the amount of $13,064.16 and to be paid in accordance with the pre-petition contract.

    iii.  The 2008 Chevy Silverado, listed in Schedules B, C,D and the chapter 13 plan as a secured debt in the amount of $14,539.54 to be paid in accordance with the pre-petition contract was, in fact, traded in to a dealer to purchase a 2014 Dodge Ram, which is titled in the name of Debtor's spouse, but not present on Debtor's Schedule B, C, or D.  There is currently approximately $16,000 in debt owed on the vehicle and an approximately $370 per month payment.  This monthly payment, however, is not listed in the chapter 13 plan or Schedule J.

        iv.  As for the 2011 Lincoln MKX, there remains a lien in the approximate amount of $13,000, and it is scheduled to be repaid by the Debtor in the amount of $800 per month.   However, this payment is not listed on Schedule J.

  c.  Debtor also testified as to the business-related vehicles found on Schedule B, Item 29, [ECF No. 1]:

        i.  PFC currently has a secured claim on two of the four 2006 Kenworth Model T600 truck tractors listed in Schedule B, Item 29 and three Kenworth Model T2000 truck tractors.  Debtor testified that a truck tractor had been surrendered to PFC at some point, but did not specify when that occurred or which truck tractor it was.

        ii.  As previously mentioned, two of the truck tractors previously subject to a claim by Mack Financial Services are no longer subject to that claim.

        iii.  Debtor estimates that his business is currently operating five of the seven truck tractors listed in Schedule B, Item 29.  The other two truck tractors are being used for parts and are otherwise non-operational.

        iv.  Debtor inconsistently testified that the truck tractors in his fleet were both non-compliant and compliant with the provisions of the Clean Air Act of 1963, 42 U.S.C. § 7401 et seq.

  d.  Debtor also testified as to the purpose behind filing the instant case.   Debtor alleged that PFC has been aggressively pursuing Debtor in regards to PFC's outstanding claims and allegedly reported the two truck tractors as stolen.

  e.  Debtor also offered significant but inaccurate and conflicting testimony on the

budget and revenues from his business operation:

    i. First and foremost, Debtor admitted that the budget for RBD Transport, Debtor's business, [ECF No. 1 at 31], was based on net revenues, not the gross income required.

    ii. Debtor had significant difficulty, due to the prior admission, in establishing a clear picture of the monthly gross income and expenses for RBD Transport.

    iii. Debtor's budget is missing key expenses such as diesel fuel, taxes on trucks, and understates other expenses, such as oil changes, car payments, and truck tractor tire repair/replacements.

    iv. Additionally, the budget was void of any payments on vehicles, estimated quarterly 1040 taxes of approximately $250 per month, Heavy Highway Vehicle Use Tax, ad valorem taxes on the homestead, and underestimated business related expenses.

f. In discussing the provisions of the Plan, Debtor's Counsel acknowledged multiple problems with the Plan, such as the foregoing, that require modification.  These include provisions in the Plan for pre-petition ad valorem taxes for the years 2013, 2014, and 2015, removal of vehicles that are either no longer in Debtor's possession, have been paid in full, and/or replacement vehicles that were not listed on the Schedules.  In a disturbing disregard of 11 U.S.C. § 521, the chapter 13 plan essentially appears as though it had just been copied and refiled from the older cases without a thorough review of the claims, budget, or plan.

g. After Debtor described the timing of payment issues with the prior case, Debtor's

Counsel offered to file a motion for the Debtor to make payments via ACH or EFT. The proposal was a little too late, as such a motion should have been initiated at the commencement of the case rather than as an afterthought at a hearing.

26.     At the conclusion of the Hearing, this Court took the Motion under advisement in order to further examine, pursuant to the requirements of § 362(c)(4), the provisions of the Plan and the schedules filed by the Debtor.

### III. Legal Standard

Section 362 provides that a stay, which is applicable to all entities, is automatically applied whenever a debtor files a petition for bankruptcy, whether voluntary or involuntary. 11 U.S.C. § 362(a) (the "***Automatic Stay***"). The stay prohibits a variety of actions against the debtor or the debtor's property. § 362(a)(1)-(8). However, the stay is subject to certain restrictions when the debtor(s) have had one or more cases pending within a year prior to filing the current petition. *Id*. at (c)(3)(a) & (4)(A). When a debtor has two or more cases pending within a year prior to filing the current petition, the Automatic Stay is not in effect. *Id*. at (c)(4)(A)(i). Section 362(c)(4)(A) states that

> (i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and
> (ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

§ 362(c)(4)(A)(i)-(ii). However, a debtor may request that a court impose the Automatic Stay within the first 30 days of filing a case, but the court may only grant such relief and impose the Automatic Stay on "any or all creditors (subject to such conditions or limitations as the court

may impose), after notice and a hearing, only if the party in interest demonstrates that the filing

of the later case is in good faith as to the creditors to be stayed." § 362(c)(4)(B); *see also In re*

*Little Creek Development Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) (discussing the standard

for good faith in the Bankruptcy Code and stating that "[d]etermining whether the debtor's filing

for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of

the debtor's financial condition, motives, and the local financial realities."). Such relief,

however, is only effective starting on the day in which the order from the court is entered. §

362(c)(4)(C). Section 362(c)(4)(D) creates a presumption that such a case is not filed in good

faith under certain conditions. A court, when considering a debtor's request for the imposition of

the Automatic Stay, must evaluate the debtor's attempt to rebut this presumption under the clear

and convincing evidentiary standard. § 362(c)(4)(D). The presumption is created, as to all

creditors, when the debtor has been shown to have met any of the following:

> "(I) 2 or more previous cases under this title in which the individual was a debtor
> were pending within the 1-year period;
>
> (II) a previous case under this title in which the individual was a debtor was
> dismissed within the time period stated in this paragraph after the debtor failed to
> file or amend the petition or other documents as required by this title or the court
> without substantial excuse (but mere inadvertence or negligence shall not be
> substantial excuse unless the dismissal was caused by the negligence of the
> debtor's attorney), failed to provide adequate protection as ordered by the court,
> or failed to perform the terms of a plan confirmed by the court; or
>
> (III) there has not been a substantial change in the financial or personal affairs of
> the debtor since the dismissal of the next most previous case under this title, or
> any other reason to conclude that the later case will not be concluded, if a case
> under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a
> confirmed plan that will be fully performed"

§ 362(c)(4)(D)(i)(I)-(III). For creditors that have sought relief from the Automatic Stay in a

previous case for the same debtor, the same presumption is maintained when, "as of the date of

dismissal of such case, such action was still pending or had been resolved by terminating,

conditioning, or limiting the stay as to such action of such creditor." § 362(c)(4)(D)(ii).

The imposition of the Automatic Stay is not a matter that is extensively found in case law. However, there are several cases in the Southern District of Texas that are instructive in analyzing the clear and convincing standard announced by the Fifth Circuit in *Shafer v. Army & Air Force Exch. Serv.*, which requires that the:

> "weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."

376 F.3d 386, 396 (5th Cir. 2004) (citing to *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)) (internal quotations omitted). In *In re Charles*, the court set forth a list of factors to be used in determining whether a debtor can, or alternatively has, established that the pending case has been filed in good faith by clear and convincing evidence. 334 B.R. 207, 219-23 (Bankr. S.D. Tex. 2005). These so-called *Charles* factors have been adopted in other sister courts in the Southern District of Texas as recently as July 2015, when the court used the factors in *In re Wright*. 533 B.R. 222, 233-34 (Bankr. S.D. Tex. 2015). The factors to be considered are as follows:

1) Does the creditor against whom the extension of the stay is sought agree to the stay extension?

2) Is it likely that the debtor will obtain a discharge in the pending case?

3) What is the nature of the debt held by the creditor?

4) What is the nature of the collateral held by the creditor?

5) Has the debtor made any purchases on the eve of bankruptcy?

6) What has been the debtor's conduct in the pending case?

7) What are the reasons why the debtor wants to extend the automatic stay?; and

8) Are there any unique facts or circumstances particular to the pending case?

*Id.* at 234.  The factors, which were intended to assess a debtor's § 362(c)(3) good faith rebuttal by the clear and convincing standard are equally instructive as to a § 362(c)(4) rebuttal, and this Court adopts the *Charles* factors for assessing a good faith filing for both §§ 362 (c)(3)&(4).  334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.

### IV.  Conclusions Of Law

**A.  Jurisdiction & Venue**

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  § 1334(a).  This is a core matter for the purpose of 11 U.S.C. § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. § 157(b)(1).  Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate."  § 157(b)(2)(A).  The decision to grant or deny the imposition of the automatic stay therein is squarely one that involves the administration of an estate. Therefore, jurisdiction is proper by the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" In his petition, Debtor alleges that he resides in San Juan, Texas. Therefore, venue is proper.

**B.  Constitutional Authority To Enter A Final Order**

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  In *Stern v. Marshall*,

the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power. *Id.* at 2620. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court to decide whether the automatic stay pursuant to 11 U.S.C. §362 (c)(4) should be imposed, [ECF No. 10], which solely concerns federal bankruptcy law. Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the matter at bar.

### C.  A Review of the 8 Factors to Determine Whether to Grant or Deny the Debtor's Motion

#### 1.  Threshold Factors – Creditor Response and Potential for Discharge

In *Charles*, the court reasoned that the first two factors amounted to a threshold test for good faith by the debtor(s).  *In re Charles*, 334 B.R. at 220-21; *see also In re Wright*, 533 B.R. at 234.  If this Court cannot find that either of the threshold factors are met, then the inquiry must continue to the latter factors.  *In re Collins*, 334 B.R. 646, 653 (Bankr. S.D. Tex. 2005).

The first factor looks at the response from a creditor to the debtor's motion to impose the Automatic Stay.  *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.  Here, the Motion filed by the Debtor seeks to impose the Automatic Stay as to all creditors, but enumerates a list of specific creditors for the stay to be imposed upon.  [ECF No. 10 at 1-2].  Of those creditors, only PFC has objected to the Debtor's Motion.  [ECF No. 13].  This Court can only infer that the remaining creditors have no objection to the stay being imposed upon them, due to their failure to file an objection prior to the deadline.  [ECF No. 10 & 11].  On the eve of the Hearing, PFC and the Debtor filed an Agreed Order with the Court, [ECF No. 23], that therefore manifests agreement with the Debtor's Motion, subject to the qualifications of the Agreed Order.  Finding of Fact No. 24.  However, the remaining creditors are deemed to have agreed to the motion, so no further analysis beyond the second factor need be done.  § 362(c)(4)(B); *In re Collins*, 335 B.R. at 653 ("A finding that the creditor against whom the extension of the stay is sought agrees to a stay extension ends the inquiry"); *Cf. In re Charles*, 334 B.R. at 220.  Accordingly, as to PFC, this Court notes that it has objected to the plan, even though PFC subsequently filed the Agreed Order, and this Court will continue the analysis for PFC claims to ensure that there is good faith on behalf of the Debtor.  Finding of Fact No. 23 &

24.

The second factor is an objective test, in the sense that it objectively analyzes the debtor's situation to determine whether the pending bankruptcy case is likely to succeed or to fail.  *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.  In order to receive a discharge in a chapter 13, the debtor must confirm a plan and perform under that plan.  11 U.S.C. § 1328.  Here, Debtor's pending bankruptcy appears to be in better condition, initially, than Debtor's second bankruptcy, which ended in automatic dismissal under § 521(i), and Debtor's first bankruptcy, which was dismissed for failure to pay the post-petition ad valorem taxes addressed for in the plan.  Findings of Fact No. 9, 10, 17 & 18.  Debtor has filed the necessary forms, as required by § 521(i), in a timely manner.  [ECF No. 1, 4, 5, and 23]; *see also* [ECF No. 10 ¶ 5]. However, after careful review of the documents on file and the testimony provided by Debtor at the Hearing makes it apparent that the plan and schedules filed by Debtor are wildly inaccurate. Finding of Fact No. 25(a)-(g).  Furthermore, it appears that Debtor's Counsel, in preparing the schedules, did little more than copy the schedules from the Second Bankruptcy case without inquiry and with barely competent updates.  *Id.*; *Compare* [Case No. 15-70503, ECF No. 1] *with* [Case No. 15-70242, ECF No. 1]; *see also* Fed. R. Bankr. P. 9011(b) (discussing that representations made to the court are to be done only *after* "an inquiry reasonable under the circumstances").  Moreover, the Plan proposed by the Debtor suffers, in part, from the same type of gross inaccuracies attributable to the missing assets and liabilities in the schedules.  Finding of Fact No. 25(a)-(g).  The Plan, while not yet confirmed by this Court nor likely confirmable, calls for 100% dividend to unsecured creditors over the course of a five year period.  [ECF No. 2 at 10].  The Plan is based on payments sourced from approximately seventy-five percent of Debtor's income, which is certainly a hefty percentage of discretionary income to be committed

to the payments; however, a large portion of the budget is based on misguided and inaccurate information that is certainly not reliable. *Id.* at 9. This alone raises feasibility issues. In its preliminary inquiry into confirmability, this Court cannot conclude that the Plan meets the requirements under 11 U.S.C. § 1325 as to be likely confirmable, due to the substantial problems with the Plan and Debtor's Schedules. *In re Charles*, 334 B.R. at 220-21. This Court has serious concerns regarding Debtor's failure to provide for insurance and taxes in the budget, failure to propose a feasible plan, failure to provide for electronic payments to the chapter 13 trustee, and failure to provision emergency savings in the Plan, especially given the volatile nature of Debtor's business. [ECF No. 1 at 32-34 & 2 at 7-8]; *see also* Findings of Fact No. 25(e)(iii) and 25(f)-(h). Under these circumstances, Debtor's Plan, once modified, could possibly result in a bankruptcy discharge should the Debtor complete all payments scheduled in the Plan. However, the current Plan is patently not confirmable, and therefore a discharge will not occur. § 1328; ECF No. 2 at 9; Findings of Fact No. 25(b)-(h). Accordingly, Debtor has not met the threshold for establishing good faith in filing the instant case, for failure to show that the prospective outcome of the Plan will allow Debtor to obtain a discharge, given the overall picture of Debtor's business operations as explained at the Hearing.

As the threshold determinations do not weigh towards a finding of good faith in the filing of the instant bankruptcy, this Court must continue with the inquiry to determine whether the Motion is filed in good faith to PFC, as the other creditors are deemed to have agreed to the motion.

## 2. Subjective Analysis – Factors Specific to the Pending Bankruptcy for PFC

The subjective analysis takes into account the remaining six *Charles* factors. *In re Charles*, 334 B.R. at 221-23. This Court will analyze these factors to determine if there is good

faith in the filing of the pending case "as to the creditors to be stayed."

The first factor considers the nature of the debt held by the creditor for whom the debtor seeks to impose the stay. *Id.* The court in *Charles* described the first factor as evaluating the purpose for which the debt was acquired, potential questionable conduct by the debtor, and if there was any malfeasance on behalf of the debtor. Here, PFC holds a secured claim on two Kenworth truck tractors in the amount of $36,720.67. [ECF No. 1 at 20]. However, there is an unsecured claim of $5,225.49, since the value of the two truck tractors, which is collectively $31,495.18, is less than the secured claim. *Id.* Debtor's business involves operating a trucking company, and thus, in order to have a successful business, the Debtor must have access to tractors. As in *Charles*, this Court is hard pressed to conclude that the nature of the debt is anything other than what was necessary to operate the business that the Debtor operates. *In re Charles*, 334 B.R. at 221. Therefore, this factor weighs towards a finding that the filing of the pending case was done in good faith.

The second factor is the nature of the collateral held by the creditor, which weighs much the same as the first factor, given its apposite analysis to the first factor. As discussed above, PFC holds collateral in the two Kenworth truck tractors used in the course of the Debtor's business. [ECF No. 1 at 20]. The Debtor has a total of seven truck tractors, of which only five are operational, and so the potential loss of the two PFC tractors would significantly hamper the Debtor's ability to perform under the plan. Finding of Fact No. 25(c)(iii). The necessity of these two truck tractors weighs towards a finding of good faith just as did the finding of the acquisition of the related debt under factor one.

The third factor is whether the debtor made any purchases on the eve of bankruptcy, such that they might appear to have been made in bad faith. The law on these types of purchases is

well settled and vitiates any appearance of good faith on behalf of Debtor.  *In re Charles*, 334 B.R. at 222; *see also In re Vianese*, 192 B.R. 61, 72 (Bankr. N.D.N.Y. 1996); *In re Barnes*, 158 B.R. 105, 108-09 (Bankr. W.D. Tenn. 1993).  The irregularities with Debtor's personal vehicles, as testified in the hearing, compared to what is provided in the schedules is extremely troubling to this Court, but it does not appear that any of the transactions were made on the eve of bankruptcy.  Finding of Fact No. 25(b)(i)-(iv).  However, Debtor did testify that he utilized the unused funds, post-dismissal of the Second Bankruptcy, to make a payment to a creditor, which effectively completed a purchase of the two truck tractors.  Finding of Fact No. 25(a).  Here, there appears to be no direct evidence of any purchases on the eve of bankruptcy such that this Court could find that the filing of the pending case was not made in good faith.

The fourth factor considers the debtor's behavior in the pending bankruptcy case.  *In re Wright*, 533 B.R. at 234.  In *Charles*, the court described this inquiry as an examination "to see if the present case is filed in a *bona fide* effort to obtain a discharge."  *In re Charles*, 334 B.R. at 222.  The *Charles* court further explained that the inquiry looks at important actions such as debtor attendance at trustee meetings, as required, the filing of schedules and statements, and the performance of other duties as required by the Code.  *Id.*  Here, the Debtor has filed his schedules and statements in a timely manner.  [ECF No. 1, 4, 5 and 23]; *see also* [ECF No. 10 ¶ 5].  The Trustee has scheduled a Meeting of Creditors, pursuant to 11 U.S.C. § 341(a), on November 19, 2015, which will occur after the Hearing.  However, the testimony presented at the Hearing provides substantial concern about the quality and veracity of the Debtor's Plan, petition, and Schedules.  Finding of Fact No.  25(a)-(h).  While these omissions and inaccuracies do not rise to the finding of not in good faith, they are a continuance of questionable behavior by Debtor and Debtor's counsel in the filing of the pending case and related Motion.  Accordingly,

this factor weighs towards a finding that the filing of the pending case was not made in good faith.

The fifth factor takes into account the debtor's purpose in seeking to have the Automatic Stay imposed. *In re Wright*, 533 B.R. at 234; *see also In re Charles*, 334 B.R. at 222. Debtor's stated purpose in seeking to have the Automatic Stay imposed as to all creditors, not just PFC, is to effectuate the bankruptcy process so that he can make his payments and complete the plan. [ECF No. 10 ¶ 7]. This Court finds Debtor's purpose to persuasively represent Debtor's ultimate goal for using the chapter 13 bankruptcy process, in the successful completion of the plan and to avoid continuing issues with PFC with respect to its claim. Finding of Fact No. 24, 25(a), 25(c)(i), and 25(d). Therefore, this factor weighs in favor of a finding of good faith in the filing of the instant case.

The sixth *Charles* factor is to analyze any facts or circumstances that are particularly unique to the pending case. *In re Charles*, 334 B.R. at 223. Here, Debtor's second bankruptcy, case no. 15-70242, was dismissed, but the court indicated that reinstatement was possible if Debtor met the requirements of the Trustee. [ECF No. 10 ¶ 3]. To further complicate matters, this Court's predecessor retired the day after Debtor met those requirements. *Id.* However, Debtor did not raise the issue of compliance with the order from the July 23, 2015 hearing with this Court after the retirement of this Court's predecessor, which resulted in this Court denying Debtor's Motion to Reconsider Dismissal approximately three weeks later. Finding of Fact No. 18. Thus, while the foregoing are facts from the prior case, they nonetheless are uniquely determinative as to the filing of the instant case. This Court finds that there are no facts or circumstances unique to the instant case that weighs towards a finding that the pending case was filed not in good faith.

The foregoing six *Charles* factors, in whole, weigh towards a finding that the pending case was filed in good faith. *In re Charles*, 334 B.R. at 219-23; *see also In re Wright*, 533 B.R. at 222-38. However, as discussed in *In re Wright*, a finding of good faith pursuant to § 362(c)(4)(B) does not require that this Court impose the Automatic Stay on any or all creditors. *In re Wright*, 533 B.R. at 239-40; *see also In re Charles*, 334 B.R. at 223. This Court, in accordance with our sister courts, agrees with this approach and therefore adds the following analysis to further make a determination as to the filing of the pending case being made in good faith.

### 3. Additional Factors to be Considered Beyond the *Charles* Factors

In addition to the foregoing *Charles* factors, this Court will take into consideration three additional factors. The first additional factor is based on the debtor's employment, irrespective of W-2 status, in whether the debtor has a wage order in place or has signed up for electronic payments with the Trustee to facilitate a successful plan. The second additional factor is based on § 362(c)(4)(D)(i)(III) and analyzing any substantial changes between a Debtor's prior bankruptcy cases and the pending case. The third additional factor, pursuant to § 362(c)(4)(D)(ii), is to determine whether any of the creditors that the debtor seeks to impose the Automatic Stay upon had in the prior bankruptcy case a pending motion for relief from stay in which the result would be a termination, conditioning, or limiting of the stay. § 362(c)(4)(D)(ii).[2]

The first of the additional factors that this Court will analyze is whether the Debtor has entered or otherwise appears to be contemplating the use of a Wage Order or EFT or ACH

---

[2] Subparagraph (ii) provides that a case is presumptively filed not in good faith "as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor."

Payments to facilitate payments being made in a timely manner.  The Southern District of Texas Bankruptcy Local Rules require that the Debtor file the appropriate form of order contemporaneously with the plan or in the alternative, as justified by extraordinary circumstances, file a motion with the court for an exception to the requirement.  BLR 1007-1(d)(1)-(3).  Here, the Debtor has vaguely mentioned in the Plan that the payments would be made in compliance with BLR 1007-1, but has failed to file the appropriate motion for EFT or ACH payments, a Wage Order, or a motion for an exception.  [ECF No. 2 at 1].  At the hearing, the issue of electronic payments did arise, and Debtor's counsel offered to take steps to arrange for Debtor to make payments electronically.  Finding of Fact No. 25(i).  Accordingly, absent excusable negligence that was not apparent at the Hearing, this Court cannot conclude that the Debtor has demonstrated good faith where it failed to comply with Local Rule 1007-1, despite the suggestion of steps to rectify the failure.

The second additional factor, pursuant to the Code, is a determination as to any "substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case."  § 362(c)(4)(D)(i)(III).  Here, the Debtor made significant progress in the second bankruptcy, case number 15-70242, towards reducing his debt by making payments of $10,000 prior to the dismissal of the case.  [ECF No. 10 at ¶ 3 & 5].  Additionally, the Debtor paid off one of his creditors in the interim between the Second Bankruptcy case and the pending case, thus eliminating a potential additional secured claim.  Finding of Fact No. 25(a).  The prior progress made by the Debtor coupled with the provisions of the Plan seem to meet the type of substantial change in circumstances contemplated in § 362(c)(4)(D)(i)(III); Finding of Fact No. 25(a).  However, due to the presence of significant missing provisions in the Plan providing for the payment of post-petition ad valorem taxes, post-petition 1040 taxes, insurance coverage,

payments on four vehicles missing in the budget and not accounted for in the Plan, and in light of its wholly inaccurate budget, this Court is hard pressed to conclude that there are substantial changes in the financial or personal affairs of the Debtor such that this Court may conclude that the filing of the instant case is substantially different from the first case.  In fact, it appeared to this Court that the Plan in the prior case was merely copied and pasted into the case that is presently pending before this court.  Finding of Fact No. 25(a)-(f).  Therefore, due to the need by Debtor to make significant amendments and modifications to the Plan and Schedules in order for this Court to conclude that the circumstances warrant a substantial change, this Court cannot find that the pending case was filed in good faith.

The third and final additional factor that this Court will consider is whether there were any pending motions for relief from stay at the time of the dismissal of the prior case.  § 362(c)(4)(D)(ii).  A survey of the docket for Case No. 15-70242 demonstrates that there were no Motions for Relief from the Stay filed in the case, and there were therefore none pending at the time of dismissal.  This Court finds that as to this third additional factor, the Debtor has filed the pending case in good faith.

Given the foregoing three additional factors that this Court has taken into consideration in addition to the *Charles* factors, this Court concludes that the pending case was not filed in good faith due to the substantial deficiencies already outlined in this opinion.  [ECF No. 2 at 1, 10 at ¶ 3 & 5].

## V. Conclusion

Debtor filed his Motion to Impose the Automatic Stay, which requires that this Court consider Debtor's conduct both in his instant and prior cases and conduct a preliminary consideration of the Debtor's filings in the instant case.  § 362(c)(4)(B).  This Court adopted the

factors used by our sister courts in *In re Charles*, *In re Collins*, and *In re Wright* to help determine whether the Debtor filed the pending case in good faith by "clear and convincing evidence."[3]  *See In re Charles*, 334 B.R. at 219-223; *see also In re Wright*, 533 B.R. at 234; *In re Collins*, 334 B.R. at 652.  The first two threshold factors did not weigh in favor of a finding that the Debtor had filed the pending case in good faith.  *Supra* Part IV.C.1.  The subjective analysis under the *Charles* factors weighed towards finding that the Debtor had filed the pending case in good faith.  *Supra* Part IV.C.2.  This Court found that an additional three factors should be used to further determine if the filing had been made in good faith, and in such inquiry, found that the Debtor's Plan and Schedules had some major anomalies.  *Supra* Part IV.C.3.  The analysis under these additional three factors concluded with a finding that the pending case had been filed not in good faith, where significant deficiencies in the Plan and omissions in the various Schedules prevented Debtor from demonstrating that substantial changes could affect Debtor's ability to successfully complete the payments scheduled in the Plan or any amended Plan.  Accordingly, Debtor's Motion to Impose the Automatic Stay is **DENIED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith for both the Debtor's Motion and the Agreed Order.

SIGNED 10/30/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[3] Clear and convincing evidence was defined by the Fifth Circuit in *Shafer*, 376 F.3d at 396.